SARAH H. MASSEY,

*vs.*

THE FARMERS' BANK of the STATE of DELAWARE, and NICHOLAS G. WILLIAMSON and VICTOR DU PONT, adm'rs of GEORGE R. MASSEY, dec'd, and FRANCIS HAUGHEY.

*New Castle, Feb. T.* 1831.

A debtor in an execution being entitled to a long term for years in land, the execution was, through ignorance of the sheriff, levied upon the land as real estate of the debtor. *Held,* to be no sufficient levy upon the term for years.

If a sheriff, having levied upon personal estate of a deceased debtor, permit the administrators to sell the same, the creditor in the execution cannot impeach the title of the purchaser, but must take his remedy against the sheriff.

BILL FOR AN INJUNCTION.—George R. Massey, deceased, was, in his lifetime, seised and possessed of certain real and personal estate, among which was a term for 999 years held by him in a house and seven acres of land. The Farmers' Bank, holding a judgment in the Supreme Court for New Castle county against Massey for $2,528.00,

caused a writ of *fieri facias* to be issued and delivered to Francis Haughey, then sheriff, to be executed. The sheriff returned the execution as levied on goods in the hands of the administrators of Massey, amounting to $1,300.00, and also on lands, as per inquisition annexed. The inquisition included the house and seven acres, *which was described and levied on as real estate*; the sheriff, when making the levy, being ignorant of the leasehold nature of Massey's interest in this property. The goods, after the levy, remained in the hands of the administrators, who sold them, under an agreement with the sheriff, that the proceeds should be applied to the execution. Afterwards, Massey's personal estate being insufficient to. pay his debts, the Orphans' Court made an order for the sale of his real estate, including the house and seven acres which had been levied on, and treating it as real estate. Under this order the house and lot was sold to the complainant, Sarah H. Massey, for $1,175.00. The sale was duly returned, and being confirmed by the Court, the house and lot was conveyed by the administrators to the complainant. After these proceedings, a *venditioni exponas* upon the judgment of the Farmers' Bank against Massey was issued, returnable to the Dec. T., 1819, under which the then sheriff Moody was proceeding to sell the leasehold interest of Massey, treating it as having been sufficiently levied on under the *fieri facias*. Thereupon, the complainant, as the purchaser of that interest at the sale by the administrators, filed her petition for an injunction, which was ordered.

This bill was afterwards filed, setting forth the facts as above stated, and alleging as grounds of equity that there had been no sufficient levy under the *fieri facias* upon the leasehold interest of Massey in the house and seven acres ; and that even were such levy sufficient in law to bind the interest, yet that the sheriff had voluntarily permitted the administrators to sell the same, and had received part of

the proceeds of sale to be applied to the execution; also that the attorney of the Bank and some of the directors had knowledge of the order of sale granted by the Orphans' Court and made no opposition to it. The bill, therefore, insisted that the complainant's title under the sale by the administrators could not be impeached under the execution.

Pending the suit, Francis Haughey, the sheriff, by whom the execution of the Bank was levied, died, and Abraham Eves, his administrator, was made a party defendant.

The answer of Nicholas G. Williamson, one of the administrators of Massey, admitted the allegations of the bill touching the proceedings in the Orphans' Court and the sale of the term for years under the order of that Court, the purchase of it by the complainant, the payment of the purchase money and the assignment of the term to her. It also stated that Haughey, the sheriff, had notice of the sale by the administrators and assented to it; and that the sheriff had also received from the administrators part of the proceeds of sale.

The answer of Abraham Eves, administrator of Haughey, the late sheriff, stated that he had no knowledge of the transactions set forth in the bill.

The Farmers' Bank, by its answer, admitted the general facts set forth in the bill touching the title of Massey, the proceedings in the Orphans' Court, and the sale, under its order, of the term for years to the complainant; and also touching the proceedings under its execution, so far as the proceedings concerned the levy. But the Bank denied that there was any agreement or permission by Haughey, the sheriff, that the administrators should sell the term, or that he received from them any part of the proceeds of such sale; it alleged that only the personal goods included in the inventory and appraisement had been sold with the sheriff's permission, and that the money received

51

by him from the administrators was for the proceeds of these goods only. The answer of the Bank also denied that its officers had knowledge of the proceedings in the Orphans' Court, and alleged that they neither assented to nor opposed the order for sale.

The cause was put at issue and came before the Chancellor at the Feb. T., 1831, for a hearing upon the bill, answers, exhibits and depositions. The facts, so far as they are material, are referred to in the opinion of the Chancellor.

*Wales,* for the complainant.

There was no sufficient levy, under the *fieri facias* of the Bank, upon the term for years. The term is not embraced in the inventory and appraisement of the goods levied upon ; and the return of a levy upon it as real estate is of no legal effect, the term being only a chattel interest. But, conceding that there *was* a legal levy upon the term for years, still the complainant took a good title under the sale by the administrators. The sheriff, Haughey, could not impeach it, because he had voluntarily permitted the administrators to sell; and he was upon general equitable principles estopped to deny the title of a purchaser under a sale made with his consent. Nor can the Bank follow the term with their execution, because if, as is contended, there was a levy upon it, the levy satisfied the execution against all except the sheriff, and the Bank's remedy was against him. The ignorance of the sheriff as to the nature of Massey's title to the house and lot, and his consequent mistake in making the levy, cannot prejudice the title of an innocent purchaser for value from the administrators, such as this complainant was. The claim of the Bank, under such circumstances, operates as a fraud on the purchaser. 2 *Bulst.* 717–750 . 3 *Johns. R.* 132 : 8 *Johns. R.* 446–452 : 1 *Wilson's R.* 44 : 4 *East R.* 523–585.

*Booth* and *Rogers*, for the Farmers' Bank.

The execution bound all the personal estate of Massey; and the levy upon his interest in the house and lot, though in form treating it as real estate, must have effect according to the nature of the property, and be taken as a levy upon the term for years. Considering it a sufficient levy, then nothing has occurred to prejudice the rights of the Bank. The equity of the bill rests upon an alleged arrangement between the sheriff and the administrators, under which the latter were, it is said, permitted to sell the term for years. But this allegation of the bill is denied by the answer of the Bank and is not proved. The only agreement or arrangement admitted by the answer was one for the sale by the administrators of the personal chattels included in the inventory. There is no legal fraud in the claim of the Bank. It had no notice of the proceedings in the Orphans' Court, and was not bound to oppose them. The proceedings under the execution and in the Orphans' Court were taken under a mistake on the part of the sheriff and of the administrators, for which the Bank is not responsible. It has now no other resource but to sell the term. For there are judgments, younger than that of the Bank, which bind the other real estate of Massey; and the Bank cannot proceed against that real estate without crediting to its judgment the value of the term for years. It must either sell or credit the value of the term.

JOHNS, SR., CHANCELLOR.—This is a bill for a perpetual injunction to stay proceedings at law and to protect the title of a *bona fide* purchaser of a chattel real, to wit, a term for years, purchased at a public sale by the administrator of the deceased lessee. The protection is sought against the claim of a judgment and execution creditor, who contends that he has now the right, by virtue of his

execution, to sell the same term for years, for the purpose of satisfying his judgment against the lessee. The ground taken by the judgment creditor is, that the levying of the execution gave him a lien upon the chattel real, with a right to sell it, which right has not been divested by the sale made by the administrators.

The judgment did not, of itself, create a lien. For this is a chattel real; and, as to such interests, a judgment is no lien, but an execution binds from its delivery to the sheriff, provided the execution is levied on the chattel before the return day of the *fieri facias*, and the sheriff does no act whereby the property is discharged from this liability.

1. The first question is, was this chattel real levied on by the sheriff? It does not appear to have been levied on as personal estate; for it is not mentioned nor appraised, as it ought to have been. The general return on the writ " levied on goods in the hands of the administrators amounting to $——" cannot be considered as a levy on the term for years, without more. But the sheriff's return is not only of a levy on goods, but there is also a levy on land, as per inquisition annexed. The inquisition embraces the house and seven acres, and levies upon it as real estate. Here was a clear mistake; and a question arises, what is the legal effect? The sheriff omits to levy on it as personal estate, and the property is levied on as land. This mistake of the sheriff, and the ignorance of the creditor in the execution as to the debtor's title in the house and lot, cannot make this a levy on the leasehold estate; for that would make the sheriff's act operate contrary to what he intended. The sheriff only levied on the house and lot as land; and he could not have considered himself responsible for it, as if he had levied on it as personal property, since he did not know that it was personal property.

2. But suppose there *was* a legal levy on this house and lot as a chattel, still there remains the question, whether

the acts of the sheriff have divested his right to sell this property, that is, George R. Massey's interest therein ?

Supposing the sheriff to have levied on the term for years as a chattel, still he had power to permit the administrators to sell it. With respect to the goods embraced in the inventory and appraisement, it appears by the return that they were, when levied on, in the hands of the administrators ; and it also appears that after the levy the administrators were permitted to retain possession of them and to sell them, though on what terms they were allowed to do so is not proved satisfactorily. By this conduct the sheriff became liable to the execution creditors for the value of the goods. If the sheriff also permitted the administrators to sell the term for years, then, on the same principle, he became liable for its value to the execution creditor, supposing the sheriff to have made a legal levy upon it, unless he can be discharged on the ground of mistake caused by his ignorance of the nature of Massey's title to the house and lot.

Sarah Massey, the purchaser of the house and lot at a public sale made by the administrators, must have as good a title to this term for years as any purchaser of goods had to articles purchased at a sale by the administrators of other parts of the personal property. The abandonment of any claim by the sheriff, in the case of a public sale, is sufficient to protect innocent purchasers who buy fairly and pay the purchase money. The general power of administrators is to sell all personal property. If any person has a prior right or lien, and, having knowledge of a public sale of the property, does not give notice of his claim, the neglect is in the nature of a fraud on purchasers, and they ought to be protected against such a claim.

It is not a question whether the Bank ought to have given notice of their claim at the sale, in order to guard purchasers against imposition. The Bank had its remedy against the sheriff and his sureties, if, after a levy, the

sheriff did not do his duty, but chose to permit the administrators to sell. The Bank, in such case, could not resort to the administrators, but the liability of the administrators was to the sheriff for the value of the property he permitted them to sell, and the Bank must resort to the sheriff. To the amount of the value of the personal property levied on, the Bank, *quoad* the debtor in the execution, is satisfied. The debtor is discharged, and the sheriff becomes the debtor.

I am, therefore, of opinion that the complainant's title ought to be protected. Let the injunction be made perpetual.

This decree was affirmed by the High Court of Errors and Appeals, at the June Term, 1833. See 1 *Harrington's Rep.* 186.